IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MAVY ANDERSON | * | |
| v. | * | Civil No. 16-cv-01567-JFM |
| JOHNS HOPKINS BAYVIEW MEDCIAL CENTER, INC., *et al.* | * | |

\*\*\*\*\*\*

## MEMORANDUM

Plaintiff Mavy Anderson ("Anderson") brings suit against Johns Hopkins Bayview Medical System, Inc., ("Hopkins") and Broadway Services, Inc., ("Broadway"), alleging  various torts and a violation of Title VII of the Civil Rights Act of 1964.  Specifically, Anderson brings claims for: assault (Count I); battery (Count II); false imprisonment (Count III); intentional infliction of emotional distress (Count IV); negligence (Count V); gross negligence (Count VI); negligent hiring (Count VII); negligent retention (Count VIII); abusive discharge (Count IX); defamation (Count X); respondent superior (Count XI); and a violation of Title VII (Count XII). Now pending are Hopkins' and Broadway's motions to dismiss specific counts in Anderson's amended complaint. (ECF No. 38; ECF No. 39).  The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motions are granted.  Counts I-VIII and Counts X-XII are dismissed against Broadway; Counts I-VI and Counts IX-XI are dismissed against Hopkins.

## BACKGROUND

At the motion to dismiss stage, this court accepts as true the facts alleged in the complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Plaintiff Mavy Anderson

("Anderson") "is a resident of Baltimore County, Maryland." (ECF No. 33, ¶ 1).  Defendant

Johns Hopkins Bayview Medical System, Inc., ("Hopkins") "is a large hospital located in the

City of Baltimore employing several thousand people." *Id.* at ¶ 2.   In August 2009, Anderson

began working for Hopkins as a housekeeper. *Id.* at ¶ 1.  Her supervisor at Hopkins was

defendant Phillip London Shields ("Shields"). *Id.* at ¶ 3.  Shields is a resident of Baltimore City

and was employed by defendant Broadway Services, Inc., ("Broadway"), which is a part of the

Johns Hopkins Health System that works on Hopkins' "maintenance, housekeeping, and other

functions." *Id.* at ¶ 3.

     Anderson alleges "beginning prior to August 2009 through March 2012, [she] was

physically, mentally, and verbally harassed by Shields." *Id.* at ¶ 7.  She further alleges Shields

sent her "sexually suggestive and vulgar text message and emails," and that Shields "made

unwelcome sexually suggestive and vulgar telephone calls" to her. *Id.*  Shields would also,

according to Anderson, "corner [her] in areas at Hopkins where they would not be seen, grab her,

kiss her, and make comments." *Id.*  Anderson also alleges Shields would instruct her "to work in

areas where she would be alone," and he would become "infuriated with [Anderson] if other

supervisors moved [her] to areas where she would be unavailable to him." *Id.*  Moreover,

Anderson contends Shields touched her without her consent, and committed "violence" toward

her. *Id.*  Specifically, she alleges Shields "coerced and forced [her] to have sexual relations with

him both in his apartment and at the Hopkins premises," and that he threatened "if she told

anyone she would be written up, reprimanded, suspended, or fired." *Id.*  Anderson contends

Shields ultimately "did make up accusations and fabricate[d] poor work performance" reports in

order to get Anderson disciplined. *Id.*  Eventually, in March 2012, Hopkins terminated

Anderson's employment, which she alleges was based on Shields' "fabricat[ed] poor performance reports." *Id.*

Anderson alleges that, as a result of the defendants' actions, she incurred medical bills, psychiatric bills, and is now earning a lower wager than she was while employed at Hopkins. *Id.* at ¶ 8.  Anderson commenced this action by filing a complaint in the Circuit Court of Maryland for Baltimore City on January 16, 2013. (ECF No. 2).  Anderson also filed a Title VII discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and the case was stayed pending resolution of the EEOC charge.  (ECF No. 4).  The EEOC issued a right to sue letter on February 26, 2016, and Anderson subsequently filed an amended complaint that included the Title VII claim. (ECF No. 33).  Once the amended complaint was filed, defendants removed the case from the Circuit Court of Maryland for Baltimore City to the U.S. District Court for the District of Maryland. (ECF No. 1).

Anderson's amended complaint alleges twelve counts against the defendants.  The amended complaint first alleges various intentional torts against all defendants based on Shields' alleged conduct: assault (Count I); battery (Count II); false imprisonment (Count III); and intentional infliction of emotional distress (Count IV). (ECF No. 33, ¶¶ 9-28).  Anderson next alleges negligence (Count V) and gross negligence (Count VI) against Broadway and Hopkins based on their alleged failure to provide a safe working environment for Anderson. *Id.* at ¶¶ 32-38.  Anderson's complaint also alleges that Broadway negligently hired (Count VII) and negligently retained Shields (Count VIII), *id.* at ¶¶ 39-42, that Hopkins abusively discharged Anderson (Count IX), *id.* at ¶¶ 43-44, that all defendants defamed her (Count X), *id.* at ¶¶ 45-49, and that Hopkins and Broadway are liable for "respondent superior" (Count XI), *id.* at ¶¶ 49-51.  Lastly, her complaint alleges a violation of Title VII of the Civil Rights Act of 1964 against

Hopkins and Broadway based on alleged sex discrimination (Count XII). *Id.* at ¶¶ 52-63. Defendant Broadway filed a motion to dismiss all counts against it on May 27, 2016. (ECF No. 38).  Defendant Hopkins also filed a motion to dismiss, or in the alternative for summary judgement, on May 27, 2016. (ECF No. 39).

## STANDARD

Defendants Hopkins and Broadway have both filed motions to dismiss pursuant to Rule 12(b)(6).[1]  "[T]he Court's consideration of the 12(b)(6) motion [is] limited to the pleadings and exhibits that are both integral and authentic, or matters of public record." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 612 (D. Md. 2011). To adequately state a claim under Rule 12(b)(6), a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  In order to determine whether Anderson's claims have crossed "the line from conceivable to plausible," the court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680.  When performing this inquiry, the court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,*

---

[1] Hopkins has noted its motion can alternatively be construed as one for summary judgment. A court may properly award summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  I will consider Hopkins' motion as one to dismiss and not as one for summary judgment.

882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual

allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to

actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also*

*Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

## ANALYSIS

Broadway moves to dismiss Counts I-VIII and Counts X-XII asserted against it. (ECF

No. 38).  Hopkins moves to dismiss Counts I-VI and Counts IX-XI asserted against it. (ECF No.

39).  Hopkins also argues the negligence and gross negligence claims (Counts V and VI), the

abusive discharge claim (Count IX), and the defamation claim (Count X), are preempted by

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185(c).[2]  I

address these arguments in turn.

### I.     Counts I-IV: Assault, Battery, False Imprisonment, and IIED

Anderson alleges various intentional torts against all defendants based on Shields'

alleged conduct: assault (Count One); battery (Count Two); false imprisonment (Count Three);

and intentional infliction of emotional distress (Count Four). (ECF No. 33, ¶¶ 9-28).  Anderson

seeks to hold Hopkins and Broadway vicariously liable for Shields' actions based on the

following allegations:

> Defendants Hopkins and Broadway are liable for the aforesaid acts of Shields and
> each other.  Shields was the agent, servant, and employee of Hopkins and
> Broadway.  Broadway is the agent, servant and employee of Hopkins.  Broadway
> and Hopkins are liable for the aforesaid wrongful tortious acts.

---

[2] Hopkins argues these four counts are preempted because they either require "the interpretation
of a collective-bargaining agreement" or are "inextricably intertwined with consideration of the
terms of the labor contract."  Anderson has failed to sufficiently respond to these arguments.
Accordingly, I agree with Hopkins on the preemption issue, but I find it unnecessary to discuss
in further detail given the discussion, *infra*.

*Id.* at ¶¶ 13, 18, 23, 28.  Hopkins and Broadway contend, however, they cannot be held

vicariously liable for these torts.  Even assuming Anderson's allegations could be construed as

establishing an employment relationship between Shields and the Hopkins,[3] I agree that Hopkins

and Broadway cannot be held vicariously liable for these intentional torts.

"It is well settled that an employer may be held vicariously liable under the doctrine of

*respondeat superior* for tortious acts committed by an employee, so long as those acts are within

the scope of employment." *Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 706 A.2d 659, 667

(Md. 1998).  The Court of Appeals of Maryland has described the scope of employment

requirement as follows:

> To be within the scope of the employment the conduct must be of the kind the
> servant is employed to perform and must [be] . . . actuated at least in part by a
> purpose to serve the master. . . . [W]here an employee's actions are personal, or
> where they represent a departure from the purpose of furthering the employer's
> business, or where the employee is acting to protect his own interests, even if
> during normal duty hours and at an authorized locality, the employee's actions are
> outside the scope of his employment.

*Samuels v. Two Farms, Inc.*, No. CIV.A. DKC 10-2480, 2012 WL 261196, at *9 (D. Md. Jan.

27, 2012) (citing *Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991)).  This court has applied this

standard, "repeatedly [holding] that, under Maryland law, an employer is not vicariously liable

for torts arising from sexual harassment by another employee because those torts [arise] outside

of the scope of employment." *Id.* at * 10.

For example, in *Perry v. FTData, Inc.*, this court dismissed a plaintiff's claims against an

employer seeking to hold an employer liable for a male supervisor's sexual harassment of the

plaintiff. 198 F. Supp. 2d 699 (D. Md. 2002).  In dismissing the plaintiff's claims for assault and

---

[3] Hopkins contends that Shields is not an employee of Hopkins and that Anderson has only made
conclusory allegations to establish a joint employer relationship between Hopkins and
Broadway. (ECF no. 39, p. 1).  I find this unnecessary to address because Anderson's claims fail
regardless.

false imprisonment, the court stressed that the relevant question is whether the supervisor, "who allegedly committed the tortious acts, did so for [the employer's] purposes and with the actual or apparent authority of [the employer]." *Id.* at 709.  The court ultimately dismissed the claims against the employer, finding that although the supervisor perhaps "used his supervisory authority over [the plaintiff] to attempt to coerce her to engage in sexual activity," the supervisor did not do so to further the employer's business or with the employer's knowledge. *Id.*; *see also Davidson–Nadwodny v. Wal–Mart Assocs., Inc.,* No. CCB–07–2595, 2010 WL 1328572, at *9 (D. Md. Mar. 26, 2010) (dismissing, as a matter of law, plaintiff's claims for assault and battery against employer, finding that "employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority.").

Anderson argues that "[w]hether an . . . individual's conduct falls within the scope of employment is normally a question for the jury." (ECF No. 48, p. 3) (citing *S. Mgmt. Corp. v. Taha,* 836 A.2d 627, 639 n.6 (Md. 2003)).  Although this may be the general rule, as evidenced by the decisions in *Perry v. FTData* and *Davidson–Nadwodny v. Wal–Mart Assocs., Inc.*, this court has repeatedly dismissed claims against employers for the intentional sexual assaults committed by its employees.  There is no question here that Shields' alleged actions were not actuated, at least in part, to serve his employer; rather, the allegations pled clearly suggest Shields' actions were personal in nature.  Furthermore, the alleged sexual harassment actions were certainly not of the type Shields was hired to perform.  Indeed, the alleged acts are in direct contrast with Hopkins' sexual harassment policies. (ECF No. 39, p. 12).  Accordingly, Anderson's attempt to hold Hopkins and Broadway vicariously liable must fail, and I dismiss

Counts I-IV alleging assault, battery, false imprisonment, and IIED,[4] against Hopkins and

Broadway.

## II.        Counts V & VI: Negligence & Gross Negligence

Anderson next alleges negligence and gross negligence against Hopkins and Broadway in

Counts V and VI of her amended complaint. (ECF No. 33, ¶¶ 29-34).  She alleges:

> Defendants Hopkins and Broadway had a duty to provide a safe work
> environment for its employees and employees of related firms and those that work
> hand in hand with its employees. Defendants breached that duty by permitting
> Shields to prey upon Plaintiff as set forth herein. Defendants knew or should have
> known of the actions of Shields. Defendants' actions were grossly negligent,
> careless wanton, outrageous and reckless. As a result of the negligence of the
> defendants, Plaintiff suffered and continues to suffer humiliation, severe mental
> distress and severe mental anguish, severe emotional distress, medical, psychiatric
> and other related expenses and loss of income.

*Id.*

Hopkins and Broadway, however, contend Anderson fails to allege sufficient facts to

support her two claims.  Specifically, Hopkins and Broadway argue Anderson failed to allege

any facts suggesting defendants either were aware of Shields' conduct or that defendants failed

to take any particular action in breach of a duty to act.  Anderson replies "[t]here is no

requirement that [defendants] be on notice of Shields' conduct as the duty is nondelegable."

(ECF No. 48, p. 8; ECF No. 46, pp. 13-14).  Anderson's view is incorrect.  As the Supreme

Court of the United States has clarified, "[a]n employer is negligent with respect to sexual

harassment if it knew or should have known about the conduct and failed to stop it." *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998); *see also Hoyle v. Freightliner*, LLC, 650 F.3d

---

[4] Defendants Hopkins and Broadway alternatively suggest Anderson has failed to sufficiently
plead the elements of false imprisonment (Count III) and IIED (Count IV). (ECF No. 38, p. 7-8;
ECF No. 39, p. 12-13).  Although these arguments have merit, and I am inclined to agree with
defendants, I find these arguments unnecessary to address because defendants cannot be held
vicariously liable based on the foregoing discussion.

321, 335 (4th Cir. 2011).  Here, Anderson's amended complaint does not allege facts suggesting

either Hopkins or Broadway "knew or should have known" about Shields' alleged conduct.

Indeed, the amended complaint alleges: (1) "Shields would corner plaintiff in areas at Hopkins

*where they would not be seen*," (2) "Shields would instruct Plaintiff to work in areas where

*should would be alone*," (3) "Shields coerced and forced Plaintiff to have sexual relations with

him *both in his apartment* and at the Hopkins premises," and (4) "Shields threatened Plaintiff

that if she told anyone she would be written up." (ECF No. 33, ¶ 7).

The "mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v.*

*McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  Here, Anderson has done little more than merely

recite the elements of negligence and gross negligence, and the alleged facts simply do not

suggest Hopkins and Broadway "knew or should have known" of Shields' alleged conduct.

Indeed, the alleged acts were done in areas "where they would not be seen," and Anderson did

not report the conduct. Anderson has failed to plead a "plausible claim for relief" for negligence

and gross negligence against Hopkins and Broadway.  Accordingly, I dismiss Counts V and VI

in Anderson's amended complaint.

### III.    Counts VII & VIII: Negligent Hiring & Negligent Retention

Anderson next alleges negligent hiring and negligent retention against Broadway in

Counts VII and VIII of her amended complaint. (ECF No. 33, ¶¶ 35-42).  Broadway contends

Anderson fails to state a cause of action for both claims because she has failed to plead a central

element: "knowledge by [Broadway] of [Shields'] predilection to commit the misconduct which

caused injury to [Anderson]." (ECF No. 48, p. 11).  I agree with Broadway.

To state a cause of action for either negligent hiring or negligent retention, Anderson must establish: "[1] that her injury was caused by the tortious conduct of [Shields], [2] that the employer *knew or should have known* by the exercise of diligence and reasonable care that [Shields] was capable of inflicting harm of some type, [3] that the employer failed to use proper care in selecting, supervising or retaining that employee, and [4] that the employer's breach of its duty was the proximate cause of the [p]laintiff's injuries. *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)) (emphasis added).  Contrary to Anderson's argument that she is entitled to discovery at this juncture,[5] this court has indeed dismissed negligent hiring and negligent retention claims where plaintiffs fail to plead facts suggesting the employer "knew or should have known" its employee would engage in the conduct at issue. *See, e.g., McCourry v. Town of Elkton*, No. CIV.A. WMN-12-1839, 2013 WL 5740679, at *7 (D. Md. Oct. 22, 2013) (dismissing negligent hiring, training, or supervision counts because the plaintiff's complaint was "devoid of a factual basis" for the assertion that "the Town Defendants knew or should have known that these officers would engage in such conduct"); *Colfield v. Safeway Inc.*, No. CIV. WDQ-12-3544, 2013 WL 5308278, at *8 (D. Md. Sept. 19, 2013) (dismissing negligent hiring and retention count because plaintiff's "general allegations do not provide facts showing that Safeway had actual or constructive knowledge that Tlusty was capable of inflicting harm");

---

[5] Anderson argues that "[t]o dismiss these counts at this juncture would violate the precept of Federal Rule 56(d)" because under Rule 12(d), this "motion must be treated as one for summary judgment under Rule 56." (ECF No. 48, p. 9-10).  This view is incorrect.  In deciding whether to dismiss these counts, I do not rely on any extrinsic evidence that would convert this motion into one for summary judgment.  *See, e.g., Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 612 (D. Md. 2011) (clarifying that if the Court's consideration of a 12(b)(6) motion is "limited to the pleadings and exhibits that are both integral and authentic, or matters of public record," the motion is not converted into a one for summary judgment).  The decision to dismiss these counts is based entirely on Anderson's failure to allege sufficient facts in her complaint to support her claim.

*Jarvis v. Securitas Sec. Servs. U.S.A., Inc.*, No. 11–CV–00654–AW, 2012 WL 527597, at *5–6 (D. Md. Feb.16, 2012) (dismissing claim when plaintiff failed to provide factual basis for assertion that employer had knowledge of security guard's conduct or general character).

Here, Anderson has not identified any facts to support a finding that Broadway knew or should have known about Shields' alleged conduct.  Rather, Anderson merely recites in her complaint that "[d]efendant knew or should have known of Shields' outrageous acts and sexual assaults." (ECF No. 33, ¶¶ 36, 40).  Critically, as discussed *supra*, the alleged acts were done in areas "where [Anderson and Shields] would not be seen," and Anderson did not report the conduct.  Construing all alleged facts in her favor, Anderson has failed to state a "plausible claim for relief," *Iqbal*, 556 U.S. at 679, as required at this stage of litigation.  Accordingly, I dismiss Counts VII and VIII in Anderson's amended complaint.

### IV.    Count IX: Abusive Discharge

Anderson next alleges abusive discharge against Hopkins, stating that Anderson "was terminated by [Hopkins] as a result of the vindictiveness of Shields and his false and outrageous allegations of [her] poor work performance." (ECF No. 33, ¶ 44).  Hopkins argues, however, that Count IX must be dismissed because Anderson "fails to assert a legally cognizable claim of abusive discharge in Maryland." (ECF No. 46, p. 17).  Specifically, Hopkins contends that either Title VII or Md. Ann. Code State Gov't § 20–602 provides a civil remedy for employment discrimination, thereby barring Anderson's reliance on those statutes to sustain a wrongful discharge claim. *Id*. at 17-18.  I agree with defendant Hopkins.

A claim for wrongful or abusive discharge is recognized in Maryland, but only "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. Am.*

*Standard Corp.*, 432 A.2d 464, 473 (Md. 1981).  Anderson alleges Hopkins' decision to

terminate her after she endured sexual harassment "violates the public policy of Maryland." *Id.*

> Md. Code Ann., State Gov't § 20-602 states, in relevant part:
>
> It is the policy of the State . . .
> (1) to assure all persons equal opportunity in receiving employment and in all
> labor management-union relations, regardless of race, color, religion, ancestry or
> national origin, sex, age, marital status, sexual orientation, gender identity, or
> disability unrelated in nature and extent so as to reasonably preclude the
> performance of the employment; and
> (2) *to that end, to prohibit discrimination in employment by any person.*

*Id.*  Despite this, however, Maryland courts have also held that wrongful discharge is unavailable

"in cases of discharge motivated by employment discrimination prohibited by Title VII and [§

20-602]."[6] *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 189 (Md. 1989); *see also Altschuld v.*

*CVS Caremark Corp.*, No. CIV. WDQ-13-3680, 2015 WL 794964, at *6 (D. Md. Feb. 24, 2015)

(dismissing plaintiff's abusive discharge claim because § 20–602 "cannot form the basis for an

abusive discharge claim"); *see also Murphy v. Republic Nat. Distrib. Co., LLC.*, No. CIV. JFM-

13-2758, 2014 WL 4406880, at *4 (D. Md. Sept. 5, 2014) ("Unfortunately for Murphy, § 20–602

cannot satisfy the public policy requirement of a wrongful discharge claim.").  The rationale is

that these statutes have their "own enforcement provision[s], and therefore cannot form the basis

[for] a wrongful discharge claim." *Murphy*, 2014 WL 4406880, at *4.

In this case, the public policy that Anderson claims was violated was Maryland's

prohibition on sexual harassment in the workplace, which is embodied in Md. Ann. Code State

Gov't § 20–101 *et seq.*  "Even assuming § 20-602 prohibits the type of retaliatory firing that

[Anderson] alleges, . . . § 20-602 . . . has its own enforcement provision, and therefore cannot

---

[6] The *Makovi* case analyzed Md. Code Art. 49B, §§ 14-18, the predecessor to Md. Code Ann.,
State Gov't § 20-600, et. seq.  *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 189 (Md. 1989).

form the basis of a wrongful discharge claim." *Murphy*, 2014 WL 4406880, at *4.  Accordingly,

Hopkins is entitled to dismissal of Count IX.

## I.       **Count X: Defamation**

Anderson next alleges defamation against all defendants, alleging Shields "made up false

allegations of [her] work performance," "made up false reports, made false statements, [and]

submitted false documents with the intent to harm [Anderson]." (ECF No. 33, ¶¶ 45-48).

Hopkins and Broadway both move to dismiss this defamation count under 12(b)(6). (ECF No.

38, p. 13-14; ECF No. 39, p. 18-20).  Specifically, Hopkins and Broadway argue that Anderson

has failed to identify a defamatory statement in her amended complaint, and that Anderson failed

to establish any defamatory statement was published to a third party. *Id.*

In a defamation case involving a plaintiff who is not a public figure, like Anderson, a

*prima facie* case requires proof of the following elements:

> (1) that the defendant made a defamatory communication—i.e., that he
> communicated a statement tending to expose the plaintiff to public scorn, hatred,
> contempt, or ridicule to a third person who reasonably recognized the statement as
> being defamatory; (2) that the statement was false; (3) that the defendant was at
> fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 317 (Md. Ct. Spec. App. 1995) (citing

*Kairys v. Douglas Stereo Inc.*, 577 A.2d 386, 391 (1990)).  The plaintiff must allege "specific

facts establishing [these] four elements" in order to properly plead a defamation claim. *Piscatelli*

*v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012).  Furthermore, "[a] defamatory statement is one

'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby

discouraging others in the community from having a good opinion of, or associating with, that

person.'" *Offen v. Brenner*, 553 F. Supp. 2d 565, 568–69 (D. Md. 2008), *aff'd,* 334 F. App'x 578

(4th Cir. 2009) (citing *Gohari v. Darvish,* 767 A.2d 321, 327 (2001)).

Here, Anderson alleges Shields made false accusations of poor work performance and these poor performance reports were "instrumental" in Anderson's eventual termination. (ECF No. 33, ¶ 7).  However, as Hopkins and Broadway argue, Anderson has failed to identify any specific defamatory statement in her amended complaint; instead, she seemingly bases her claim on the alleged "false" nature of Shields' accusations.  Although falsity is a requirement of a defamation claim, so is the defamatory nature of the communication.  Anderson's allegations that "Shields made up false reports, made false statements, [and] submitted false documents with the intent to harm [Anderson], *id.* at ¶ 47, does not satisfy her burden at this stage of litigation.

Furthermore, Anderson also fails to allege any defamatory statements were communicated to a third party.   Indeed, "the alleged defamatory publication must be communicated to a third person and that person must reasonably recognize the publication to be defamatory." *Mareck v. Johns Hopkins Univ.*, 482 A.2d 17, 20 (Md. Ct. Spec. App. 1984).  Here, in her amended complaint, Anderson fails to allege any defamatory statement was communicated to a third person who reasonably recognized the statement to be defamatory.  Rather, to support her claim, Anderson essentially alleges "Shields . . . submitted false documents with the intent to harm [her]." (ECF No. 33, ¶ 46).  In Anderson's opposition, she further contends "her failure to ascertain the identity of those to whom Shields make false statements [to] is hardly fatal" because "the logical inference is that they were given or published, [and] not simply left in the desk drawer of Mr. Shields." (ECF No. 46, p. 15).  Whether or not such an inference is "logical," it is clear that Anderson has not met her burden of alleging "specific facts establishing [this] element[]" in her amended complaint. *Piscatelli*, 35 A.3d at 1147.

Given the preceding discussion, it is evident that Anderson has failed to establish a *prima facie* case for defamation, which warrants dismissal of this count.  However, it is also worth

noting that even if Anderson could sufficiently plead the defamation elements, it is unclear if

Hopkins or Broadway could be held vicariously liable for Shields' alleged defamatory remarks.

"Defamatory remarks published to [] fellow employees" are accorded a "conditional privilege . .

. grounded upon the well settled privilege accorded to statements made within the context of the

employer-employee relationship." *See, e.g.*, *Happy 40, Inc. v. Miller*, 491 A.2d 1210, 1214 (Md.

Ct. Spec. App. 1985); *see also Gladhill v. Chevy Chase Bank, F.S.B.*, No. 905 SEPT.TERM

2000, 2001 WL 894267, at *9 (Md. Ct. Spec. App. Aug. 1, 2001) ("A qualified privilege

generally protects the employer with regard to publication to co-workers as to the reason for an

employee's discharge."). Furthermore, "[t]he existence of a conditional privilege is a question of

law for the court." *Gladhill*, 2001 WL 894267, at *10.  Although this privilege can be overcome,

it requires the plaintiff to establish "either that the defendant acted with constitutional malice,

that the statement was not made in furtherance of the reason for the privilege, or was

communicated to a third person who is outside the protection of the privilege." *Id.* (citing *Gohari*

*v. Darvish*, 767 A.2d 321, 338 (2001)).  Here, Anderson pleads no facts suggesting Hopkins or

Broadway acted with constitutional malice, or that Shields' alleged defamatory communications

were sent to a third party.  In her opposition, Anderson cites to *Embrey v. Holly* for the

proposition that an employer can still be held liable for [defamatory] statements of its agents,

including being held liable for punitive damages. 442 A.2d 966 (Md. 1982).  However, that case

dealt with the on-air defamatory statements of a radio disc jockey who was acting both within the

scope of his employment, and for the benefit of his employer when he made the statements. *Id.* at

135-36.  Not only did the statements in *Embrey v. Holley* meet the "actual malice" standard, but

they were broadcast over the air to the general public. *Id.* at 139-40.  Anderson has pled no facts

here to overcome the qualified privilege.  Accordingly, Hopkins and Broadway are entitled to dismissal of Count X.

## II.        Count XI: Respondent Superior

Count XI is styled as a claim of "respondent superior." (ECF No. 33, ¶¶ 49-51).  As defendants correctly clarify, this is not an independent cause of action.  Anderson concedes this point in her opposition. (ECF No. 46, p. 16).  Accordingly, I dismiss Count XI against all defendants.

## III.       Count XII: Violation of Title VII

Anderson next alleges Hopkins and Broadway violated Title VII of the Civil Rights Act of 1964, as amended, because they employed Shields who allegedly sexually harassed Anderson. (ECF no. 33, ¶¶52-63).  Broadway moves to dismiss this count "for the simple reason that Broadway Services was never [Anderson's] employer." (ECF No. 38, p. 14).  Hopkins does not move to dismiss this count. (ECF No. 39, p. 1).

Title VII makes it unlawful "for an *employer*" to discriminate against employees based on race, color, religion, sex, or national origin. 42 U.S.C § 2000e-2(a) (emphasis added).  Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." *Id.* at § 2000e(b).  Title VII defines an employee as "an individual employed by an employer." *Id*. at § 2000e(f).  Title VII claims "based on something other than an employment relationship" "must be dismissed with prejudice because [Title VII applies] only to employment relationships." *Ellie v. Sprint*, No. CV TDC-15-0881, 2015 WL 5923364, at *2 (D. Md. Oct. 7, 2015); *see also Farlow v. Wachovia Bank of N. Carolina, N.A.*, 259 F.3d 309, 313 (4th Cir. 2001) ("Each side concedes that Title VII only applies if Farlow was an employee of Wachovia").  Anderson, as plaintiff, is responsible for

"alleging the existence of an employment relationship in order to state a Title VII claim." *Bender v. Suburban Hosp.*, 998 F. Supp. 631, 634 (D. Md.), *aff'd sub nom. Bender v. Suburban Hosp., Inc.*, 159 F.3d 186 (4th Cir. 1998).  Generally, in order to establish whether an individual is an employee, the Fourth Circuit has adopted a two-part test. *See Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 219-21 (4th Cir. 1993)*; see also Price v. Grasonville Volunteer Fire Dep't*, No. CIV.A. ELH-14-1989, 2014 WL 7409891, at *9 (D. Md. Dec. 30, 2014) ("The Fourth Circuit has adopted a two-part test to determine whether an individual is an employee in a discrimination case."); *Stewart v. Morgan State Univ.*, 46 F. Supp. 3d 590, 594 (D. Md. 2014), *aff'd,* 606 F. App'x 48 (4th Cir. 2015) (same).  First, in order to establish the existence of an employment relationship, "the employee must demonstrate that compensation was received in exchange for the service provided to the employer." *Stewart*, 46 F. Supp. 3d at 595; *Price*, 2014 WL 7409891, at *9.  "Once the threshold issue of remuneration is established, the inquiry shifts to 'analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test.'" *Price*, 2014 WL 7409891, at *10 (citing *Haavistola*, 6 F.3d at 219–20).

Here, Anderson alleges in her complaint that she "became employed by Defendant Johns Hopkins Bayview Medical System, Inc., as a housekeeper" in August 2009. (ECF No. 33, ¶ 1). She further alleges "Shields was an employee of Broadway." *Id.* at ¶ 4.  Despite the fact that Anderson was not employed by Broadway, she supposedly maintains her Title VII claim against Broadway based on the allegation that "Broadway Services is part of the Johns Hopkins Health System and works hand in hand with [Hopkins] with respect to [Hopkins'] maintenance, housekeeping, and other functions." *Id.* at ¶ 4.  Although "compensation" need not be monetary, Anderson still does not allege she received any "compensation . . . in exchange for the service

provided to [Broadway]." *Stewart*, 46 F. Supp. 3d at 595.   Under the Fourth Circuit's two-part

test, Anderson has failed to plead sufficient facts in her complaint to establish an employment

relationship by merely alleging that "Broadway Services is part of the Johns Hopkins Health

System and works hand in hand with [Hopkins] with respect to [Hopkins'] maintenance,

housekeeping, and other functions." (ECF No. 33, ¶ 4).

It should be noted that Anderson also seeks to sidestep this requirement by arguing, for

the first time in her opposition, that Broadway and Johns Hopkins are an "integrated enterprise,"

and therefore her Title VII claim is viable against Broadway.   The "integrated enterprise" theory,

which the Fourth Circuit has previously applied when defining "employer" in Title VII cases,

"makes corporations liable for another corporation's actions when the corporations are closely

connected." *Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 455-56 (D. Md.

1999).   "To determine whether two entities constitute a single employer or integrated enterprise,

courts consider four factors: (1) the interrelation of operations; (2) whether there is common

management; (3) whether there is centralized control of labor relations; and (4) whether there is

common ownership and financial control." *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp.

2d 757, 770 (D. Md. 2010); *see also Thomas*, 61 F. Supp. 2d at 456.   However, the *Thomas* court

also clarified that several factors are "of low or no probative value to this inquiry," including if:

(a) "the operations of the companies, themselves, are interrelated," (b) "one company ultimately

benefits from the work of the other," (c) "the plaintiffs believed that they were employees of the

putative employer," or (d) "the supervisors of the subsidiary ultimately reported to officers in the

parent company, or that certain high level management employees perform functions for both

companies." *Thomas*, 61 F. Supp. 2d at 456.

Here, the only allegation in Anderson's complaint that could potentally support an "integrated enterprise" finding is that "Broadway Services is part of the Johns Hopkins Health System and works hand in hand with [Hopkins] with respect to [Hopkins'] maintenance, housekeeping, and other functions." (ECF No. 33, ¶ 4).  This allegation only speaks to the factors the *Thomas* court explicitly stated were "of low or no probative value to this inquiry."  And it does not address the factors that courts actually consider when determining whether businesses are engaged in an "integrated enterprise."  Accordingly, given the facts alleged, I find Broadway is not an employer within the Title VII context, and I dismiss Count XII against Broadway.

## CONCLUSION

For the foregoing reasons, Broadway's motion to dismiss (ECF No. 38) and Hopkins' motion to dismiss (ECF No. 39) are granted.  Specifically, Counts I-VIII and Counts X-XII in the amended complaint (ECF No. 33) are dismissed against Broadway; Counts I-VI and Counts IX-XI are dismissed against Hopkins.  A separate order follows.


 1/18/2017                                              /s/                                
Date                                                J. Frederick Motz
                                                    United States District Judge